THOMAS ALLEIN ADM'R OF RICHARD
G. HUTTON AND OTHERS,
vs.
JOSEPH G. HUTTON AND OTHERS.
} DECEMBER TERM, 1841.

[SALE OF MANUMITTED NEGROES TO PAY DEBTS.]

WHERE negro slaves are manumitted by deed or will, and the real and personal estate of the manumittor or testator are insufficient for the payment of his debts, his creditors may file a bill in equity making the manumitted slaves and all persons interested parties, and have an account taken of all the property of the deceased, and if it shall prove insufficient to pay his debts, the manumitted slaves may be decreed to be sold for that purpose, either for life or a term of years, as the circumstances or the nature of the case may require.

Richard G. Hutton, of Anne Arundel county, by a deed of manumission, executed on the 9th of November, 1819, manumitted sundry negro slaves after a term of years, to wit: "George, aged twenty-five, to be free on the 1st of January,

1827; James, aged twenty-three, to be free on the 1st of January, 1827; Little James, aged twenty, to be free on the 1st of January, 1828; William, aged one year, to be free on the 1st of March, 1840; woman Nancy, aged nineteen, to be free on the 1st of January, 1827, and all the increase of the said Nancy born during the time of her servitude to serve, if males, twenty-one years, and if females, eighteen years. Woman Minta, aged seventeen, to be free on the 1st of January, 1824, and all the increase of the said Minta born during the time of her servitude, to serve, if males, to the age of twenty-one years, and if females, eighteen years, and the increase of the above women, born after their term of servitude is expired, to be free to their latest generations."

Hutton died in 1832, and on the 25th of October, 1833, negro Jim Sharp, one of the negroes manumitted by the above instrument, filed his petition for freedom in Anne Arundel County Court, against Thomas Allein, the administrator of Hutton, who had taken possession of him, and returned him in the inventory as a part of Hutton's estate. The right of the petitioner to his freedom was resisted by the administrator, on the ground that Hutton, at and before the period of the execution of the said deed of manumission, was in insolvent circumstances, being indebted to an amount exceeding the value of all his property of every description, including the negroes manumitted by said deed, and that the same was fraudulent as to the creditors of said Hutton.

This case was brought before the Court of Appeals upon appeal by the administrator, and that court, at its June term, 1835, decided that in the suit for the petition for freedom, "the question whether the estate of the deceased was sufficient to pay his debts, could not be legally decided, so as to deprive the petitioner of his right to freedom, and that the proper remedy in such a case is by a bill in equity where the manumitted slaves and all proper parties can be brought before the court, and where an account may be taken of all the property of the deceased, both real and personal, and if that should be found inadequate to the payment of his debts, the manumitted slaves

may be decreed to be sold for that purpose, either for life or for a term of years, as circumstances or the nature of the case might require." See *Allein* vs. *Sharp*, 7 *Gill & Johns.*, 96 to 108.

On the 15th of November, 1836, Allein, the administrator, and several of the creditors of Hutton, for themselves and all others who should come in and contribute to the costs of suit, accordingly filed their bill in equity, alleging that Hutton, at the time of the execution of said deed of manumission, was largely indebted to divers persons; that said debts exceeded the value of all his property of every description, and that he continued insolvent and embarrassed in his affairs from that time till his death. That Hutton remained in possession of the negroes manumitted by said deed and their increase till his death. That he executed said deed with a view of prejudicing, defeating, delaying and defrauding his creditors, and with a view of securing to himself a valuable interest in the services of said negroes for a period, as he then supposed, commensurate with his own life, and that the same is fraudulent and void as against the creditors of said Hutton. That after Hutton's death, his administrator, Allein, took possession of said negroes as part of his personal estate, and included them in the inventory; which he returned to the Orphans Court. The bill then states the petition for freedom and the decision of the Court of Appeals, and insists that this court will charge the said negroes with the payment of the debts of the said Hutton by extending their term of servitude, or, if necessary, by selling them as slaves for life.

The bill then makes the infant children and heirs at law of said Hutton, and the manumitted negroes parties defendants, and calls upon them to disclose the names and ages of the issue of the said manumitted negro women, Nancy and Minta, and prays that such issue, if any, may be made defendants, and that a decree may be passed vacating said deed of manumission as in prejudice of creditors, and charging the said negroes with the debts of said Hutton, and that for this purpose a sale of said negroes, either for a term of years or for life may be directed by said decree, and for general relief.

The infant heirs at law of Hutton, answered by their guardian, *ad litem*, that they knew nothing of the matters charged in the bill, and did not admit the truth thereof. The negroes not having answered, a decree, *pro confesso*, as to them, was passed, and a commission issued to take testimony, under which the allegations of the bill were fully proved.

An order was then passed, directing the defendants to account with the plaintiffs of, and concerning the real and personal estate of the said Hutton, deceased, referring the cause to the Auditor to state such account, and to make a statement of the debts of the said Hutton, upon due notice to the creditors to file their claims. In obedience to this order, the Auditor, on the 6th of December, 1841, filed his report and statement of claims, by which it appeared, that the debts due by the deceased amounted to $9421 79, that no account of his personal estate was rendered by the administrator, it appearing from the testimony that none came to his hands, the whole having been absorbed by executions binding thereupon.

The Chancellor, (*Bland*,) thereupon, on the 21st of December, 1841, passed a decree, by which it was "adjudged, ordered and decreed, that the Auditor's statement, lately reported in this cause, be, and the same is hereby ratified and confirmed, and that the defendants, Jim Sharp, Jim Ennis, Nancy, George, Minta, Lloyd, Samuel, Admirilla, William and Wilson, together with the increase, if any, of the said Nancy, Minta and Admirilla, be sold for the purpose of satisfying the claims of the complainants as aforesaid." The decree then appoints a trustee to make the "sale of the said negroes for life," upon giving the usual notice. The terms of sale being for cash, or on a credit upon such terms as may be deemed by the trustee most advantageous for all concerned, the sale to be made publicly or privately, as the trustee may deem most advisable.

Under this decree the negroes were sold, and the sale was confirmed by the Chancellor.

A. Randall and Thos. S. Alexander, for the Complainants.
N. Brewer and J. Johnson, for Defendants.